HARRIS, Plaintiff, v. KNUTSON and another, Defendants and Appellants: BADGER MUTUAL INSURANCE COMPANY, Defendant and Respondent.

*March 1—June 30, 1967.*

568

For the appellants there was a brief by *Heide, Sheldon, Hartley & Thom* and *W. A. Sheldon,* all of Kenosha, and oral argument by *W. A. Sheldon.*

For the respondent there was a brief by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *Louis W. Staudenmaier, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Staudenmaier.*

BEILFUSS, J. The issues are:

1. Was Hogan an agent of Badger by virtue of the statutes in force at the time of the transaction in question?

2. If Hogan was not Badger's agent under the statute was he an apparent agent or did he have apparent authority to obligate Badger?

The appellants contend that Hogan was an agent of Badger's by virtue of legislative enactment. The statutes to be considered as to this issue are as follows:

Wis. Stats. 1953:

"209.04 **Licensing of agents other than life.** (1) APPLICATION; LICENSE; FEE. (a) *'Agent' defined.* The term 'agent', as used in this section, shall mean any natural person, resident in this state, authorized by law to solicit, negotiate or effect contracts of insurance other than life insurance. . . ."

"209.05 **Who are agents.** Every person or member of a firm or corporation who solicits insurance on behalf of any insurance company or person desiring insurance of any kind, or transmits an application for a policy of insurance, other than for himself, to or from any such company, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance company, or advertises to do any such thing, shall be held to be an agent of such company to all intents and purposes, unless it can be shown that he receives no compensation for such services. . . ."

Wis. Stats. 1961:

"209.04 **Licensing of agents other than life.** (1) 'AGENT' DEFINED. The term 'agent', as used in this section, means any natural person authorized by law to solicit, negotiate or effect contracts of insurance other than life insurance. . . ."

Wis. Stats. 1963:

"209.04 **Licensing of agents other than life.** (1) 'AGENT' DEFINED. The term 'agent', as used in this sec-

tion, means any natural person who acts as an agent as defined in s. 209.047. . . ."

"209.047 **Agent defined.** Every person who solicits, negotiates or effects insurance of any kind, including annuities, on behalf of any insurance company, nonprofit service plan as defined by s. 200.26, or person desiring insurance, or transmits an application for a policy of insurance or an annuity contract, other than for himself, to and from any such company, or who makes or proposes to make any contract for insurance or annuities, or who collects any premium, assessment, fees or dues for insurance or annuities or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance company or nonprofit service plan as defined by s. 200.26 or advertises to do any such thing, or who makes or proposes to make, as guarantors or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety shall be held to be an agent of such insurer to all intents and purposes, unless it can be shown that he receives no compensation for such services. . . ."

Sec. 209.05, Stats. 1953, and sec. 209.047, Stats. 1963, are substantially alike. The respondent, Badger Mutual, does not seriously dispute that Hogan would be classified as an agent under either of these two statutes. Badger does, however, significantly point out that sec. 209.05, Stats. 1953, was repealed by the legislature in 1955, and that sec. 209.047, Stats. 1963, was not enacted until 1963. Although sec. 209.05, Stats. 1953, had been enacted many years ago and remained substantially unchanged, it was repealed by the legislature in 1955. The unavoidable fact is that this broad insurance agency statute did not exist during the time of transactions in question, namely 1961 and 1962. The cases cited by the appellants [1] are dependent on sec. 209.05, Stats. 1953, and

---

[1] *Pouwels v. Cheese Makers Mut. Casualty Co.* (1949), 255 Wis. 101, 37 N. W. (2d) 869; *Witt v. Employers Liability Assurance Corp.* (1929), 198 Wis. 561, 225 N. W. 174.

the other statutes cited deal with licensing requirements and have no application to the facts at hand.

We agree with the trial court—Hogan was not an agent by virtue of statutory definition at the times material to this action.

Before discussing the question of apparent authority it should be pointed out that this issue was not raised in the trial court and was not presented by the parties to this appeal in their original briefs. Both the appellants and respondent have filed supplemental briefs at the request of the court upon the questions of apparent authority and estoppel.

The findings of fact by the trial court were not formulated in view of the issues of apparent authority or estoppel. Ordinarily the facts upon those issues should be resolved by a jury or the trial court without a jury, as the case may be. However, in this instance the facts upon which this issue must be decided appear in the record without dispute. As stated in 3 Couch, Insurance (2d), p. 487, sec. 26:29:

"Where the facts and circumstances as disclosed by the evidence are not disputed or are not in substantial conflict, the question whether a person was the agent of the insurer is one of law for the court."

In *Hansche v. A. J. Conroy, Inc.* (1936), 222 Wis. 553, 559, 269 N. W. 309, this court defined apparent authority as follows:

"Respondent seeks to hold appellant liable on the basis of apparent agency. This brings us to consideration as to what is meant by apparent authority. The rule applicable here is thus stated in 1 Restatement, Agency, p. 25, sec. 8:

" 'Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent.

" 'Comment: *a*. An apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other. An apparent principal is the person for whom an apparent agent purports to act. The apparent agent may have authority which is coextensive with his apparent authority; he may be authorized to act in other ways but not in the way as to which he has apparent authority; or he may not be authorized to act in any respect for the purported principal. If the authority and the apparent authority are coextensive, the liability of the principal resulting from conduct of the agent may be based upon either authority or apparent authority.

" '*b*. The manifestation that another is to act as agent may be made to the community in general, by advertisements or otherwise. Apparent authority, however, exists only with respect to a person to whom such a manifestation has been made or to whom knowledge of it comes.'

"Three elements are necessary to establish apparent agency: (1) Acts by the agent or principal justifying belief in the agency. (2) Knowledge thereof by the party sought to be held (in the present case, appellant). (3) Reliance thereon by the plaintiff, consistent with ordinary care and prudence. *Domasek v. Kluck*, 113 Wis. 336, 339, 89 N. W. 139." [2]

We have recently stated in *Ivers & Pond Piano Co. v. Peckham* (1966), 29 Wis. (2d) 364, 370, 139 N. W. (2d) 57:

" '. . . apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or to make representations as his agent.' Seavey, Law of Agency (hornbook series), p. 13, sec. 8."

We are not unmindful of the fact that Hogan was not a regular licensed agent of Badger; that Badger had no choice in the selection of Hogan as an agent in this

---

[2] See also *Sell v. General Electric Supply Corp.* (1938), 227 Wis. 242, 248, 278 N. W. 442; *Risdon, Inc., v. Miller Distributing Co.* (1966), 29 Wis. (2d) 418, 139 N. W. (2d) 12.

instance by virtue of the mandatory nature of the Wisconsin assigned risk plan,[3] and that Hogan was identified as a "producer" and not an agent in the application for insurance.

In determining whether a person is an apparent agent or has apparent authority, the test is not solely dependent upon what he is called in any particular instrument but rather upon the acts of the principal and the agent, and the reasonableness of the reliance by the third person.

Had Badger designated Hogan as producer throughout the transactions a more difficult problem would present itself; the fact is that in every significant transaction after receipt of the application Badger designated Hogan as agent and gave his business address.

The undisputed facts that lead us to the conclusion that Hogan was an apparent agent with apparent authority to act for Badger are: Bereni, an eighteen-year-old student went to Hogan, a person known to be an insurance agent, for the purpose of obtaining automobile liability insurance; signed an application prepared by Hogan and paid Hogan the premium; received the policy from Hogan with Hogan designated as agent; returned to Hogan for a transfer of insurance for a second automobile, again received an endorsement with Hogan designated as agent; received a renewal notice from Badger with Hogan designated as agent; and was informed by Hogan that his requested transfer to a third automobile would be accomplished. In addition thereto, Badger received the premium from Hogan; paid Hogan a commission; unequivocally designated Hogan as agent on the policy, on the endorsement, and on the renewal notice, and finally Badger sent Hogan copies of endorsements, notices, and correspondence.

Appleman, in his section dealing with acts of an insurer which confer apparent authority upon another to act as its agent, states the following:

[3] See sec. 204.51 (2), Stats.

"If the insurer actually accepts the application and issues its policy thereon, it is in no position to question the authority of the agent to make the contract or to question the fact that he was the company's agent. Similarly, one procuring the application, collecting premiums, and delivering the policy, apparently with the insurer's knowledge, consent, and authority, must be considered the insurer's agent. And the collection of premiums may preclude the insurer from denying such agency." 16 Appleman, Insurance Law and Practice, p. 95, sec. 8677.

A similar view is expressed in 3 Couch, Insurance (2d), p. 481, sec. 26:25:

". . . if one purporting to act as agent receives an application, accepts the premium, secures and delivers the policy, and does everything necessary to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer.

"An implication of the authority arises . . . by the insurer's act in sending a policy to a person for delivery to the insured."

The acts of both Hogan and Badger were such as to justify a reasonable belief that Hogan was the agent of Badger; Badger knew of its acts and those of Hogan, and Bereni did exercise ordinary care and prudence in relying on Hogan's apparent authority. Notice to Hogan was therefore notice to Badger.

The respondent, Badger Mutual, contends that even if it vested Hogan with apparent authority in the eyes of Bereni, such authority could not estop the respondent from asserting its defense. Otherwise, argues respondent, estoppel would be used to extend the coverage of an insurance contract, which is not permitted in Wisconsin.

The rule that estoppel will not be applied to create new coverage was recently expressed in *Artmar, Inc., v. United Fire & Casualty Co.* (1967), 34 Wis. (2d) 181, 185, 148 N. W. (2d) 641:

"Wisconsin has repeatedly held that estoppel cannot be used to create a liability for benefits not contracted for

at all. Permitting estoppel in such cases would extend the contract to a liability which the parties understood and expressly agreed should not be covered by the contract. The policy behind this rule is to avoid creating a new contract providing coverage for which no premium has been paid."

See also *Ahnapee & W. R. Co. v. Challoner* (1967), 34 Wis. (2d) 134, 148 N. W. (2d) 646; *Albert v. Home Fire & Marine Ins. Co.* (1957), 275 Wis. 280, 81 N. W. (2d) 549; *McCoy v. Northwestern Mut. Relief Asso.* (1896), 92 Wis. 577, 66 N. W. 697.

The rule is inapplicable in this case because the liability would only be for benefits contracted and paid for. No new coverage will be created because the policy already provided coverage for automobiles taking the place of the original automobile. The recognition of the agency relationship only makes effective the coverage which already potentially exists, it does not create coverage Badger did not bargain for.

*By the Court.*—Judgment reversed, and remanded for further proceedings.

HALLOWS, J., took no part.