IOWA NATIONAL MUTUAL INSURANCE COMPANY and another, Appellants, v. BACKENS, d/b/a GOODYEAR OK TIRE SERVICE, Defendant: GOODYEAR TIRE & RUBBER COMPANY, Respondent.

*No. 69. Argued March 29, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 196.)

[8] *Fosha v. O'Donnell* (1904), 120 Wis. 336, 97 N. W. 924.

28

For the appellants there were briefs by *Robert D. Johns, Jr.*, and *Johns, Flaherty, Harman & Gillette*, all of La Crosse, and oral argument by *Robert D. Johns, Jr.*

For the respondent there was a brief by *Stafford, Rosenbaum, Rieser & Hansen*, and oral argument by *Richard A. Hollern*, all of Madison.

BEILFUSS, J. The parties have presented two issues on this appeal:

(1) Was Howard Backens an apparent agent or did he have apparent authority to act on behalf of the Goodyear Tire & Rubber Company?

(2) If Backens was not an apparent agent, did the Goodyear Tire & Rubber Company have the duty to regulate and supervise the operation of his business for the protection of his customers?

The first issue tried by the court was whether an apparent or ostensible agency existed between Backens, as an apparent agent, and Goodyear as principal. It is undisputed that at no time was Backens an actual agent of Goodyear.

In *Harris v. Knutson* [1] the court stated at pages 574, 575:

"In *Hansche v. A. J. Conroy, Inc.* (1936), 222 Wis. 553, 559, 269 N. W. 309, this court defined apparent authority as follows:

" 'Respondent seeks to hold appellant liable on the basis of apparent agency. This brings us to consideration as to what is meant by apparent authority. The rule applicable here is thus stated in 1 Restatement, Agency, p. 25, sec. 8:

" ' "Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent.

" ' "Comment: *a.* An apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other. An apparent principal is the person for whom an apparent agent purports to act. The apparent agent may have authority which is coextensive with his apparent authority; he may be authorized to act in other ways but not in the way as to which he has apparent authority; or he may not be authorized to act in any respect for the purported principal. If the authority and the apparent authority are coextensive, the liability of the principal resulting from conduct of the agent may be based upon either authority or apparent authority.

" ' "*b.* The manifestation that another is to act as agent may be made to the community in general, by advertisements or otherwise. Apparent authority, however, exists only with respect to a person to whom such a manifestation has been made or to whom knowledge of it comes."

[1] (1967), 35 Wis. 2d 567, 151 N. W. 2d 654.

" 'Three elements are necessary to establish apparent agency: (1) Acts by the agent or principal justifying belief in the agency. (2) Knowledge thereof by the party sought to be held (in the present case, appellant). (3) Reliance thereon by the plaintiff, consistent with ordinary care and prudence. *Domasek v. Kluck*, 113 Wis. 336, 339, 89 N. W. 139.'

"We have recently stated in *Ivers & Pond Piano Co. v. Peckham* (1966), 29 Wis. (2d) 364, 370, 139 N. W. (2d) 57:

" ' ' ' . . . apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or to make representations as his agent." Seavey, Law of Agency (hornbook series), p. 13, sec. 8.' "

The question of the existence of the three elements necessary to establish apparent agency ordinarily presents issues of fact to be resolved by the finder of fact, whether it be a jury or the court without a jury. *Harris v. Knutson, supra.* Consequently, the standard of review to be applied here is whether the findings which have been made are against the great weight and clear preponderance of all the evidence. *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212.

In this regard it should be noted that the trial court here did not make any delineated findings of fact and conclusions of law, but simply issued a brief memorandum decision. Two sections of that decision may be interpreted as implying the necessary findings of fact. Concerning the first element, acts by the agent or principal justifying belief in the agency, the court said:

"The defendant Howard Backens has been the operator of a Sinclair Station in Tomah, Wisconsin for many years. As such operator he sold Goodyear tires, batteries and appliances. The tires included recaps which he purchased from a Goodyear recapping plant in La Crosse, Wisconsin.

"In 1963 he purchased a recapping plant from Goodyear, purchased material from them, displayed Goodyear advertising signs, placed Goodyear's approved advertising in the newspaper and on radio, and he wore Goodyear work uniforms."

And concerning the third element, reasonable reliance on these acts by the party seeking to establish the apparent agency, it said:

"The plaintiff, Francis Sorenson, who purchased the tires which are the subject of this lawsuit, went to the 'Goodyear OK Tire Service' because Backens was 'a friend' and because 'it was convenient,' but he would not have gone to 'a junk place' to buy a recapped tire."

The court then concluded by saying:

"Plaintiff desires that it be concluded from these facts that Goodyear cloaked Backens with 'apparent authority' to act as its agent.
"I have reviewed all the authorities submitted by both parties and cannot arrive at such a conclusion."

While we do not consider the memorandum a model to be followed, we do believe that it does contain sufficient findings of fact to support the judgment. The evidence here is relatively undisputed and we are confident that the final decision on these issues would not be different if we returned the matter to the trial court for more detailed findings of fact.

As set forth above, the first two elements of apparent authority are, "(1) Acts by the agent or prinicpal justifying belief in the agency," and "(2) Knowledge thereof by the party sought to be held."

Here, pursuant to his TBA franchise with Sinclair, Goodyear allowed Backens to display a Goodyear sign in public view at his Sinclair station, to use invoices and statements which bore the Goodyear emblem, to wear a Goodyear emblem on his service station uniforms, and to advertise Goodyear products on the local radio

and in the local newspapers. It approved the sale of their recapping equipment to him, and also allowed him to continue these advertising practices in his new place of business, the OK Tire Service.

These facts are undisputed and, although not specifically ruled upon by the trial court, probably satisfy the first two elements of the apparent authority test.

Under the facts of this case the issue of apparent authority is determined by the third element, namely, reliance by Sorenson (consistent with ordinary care and prudence) that Backens was the apparent agent of Goodyear in the recapping of tires.

To satisfy the burden of proof, a party claiming apparent agency must show that he relied upon the apparent agency [2] and that he exercised ordinary care in such reliance.

The plaintiffs-appellants cite *Everlite Mfg. Co. v. Grand Valley Machine & Tool Co.* (1969), 44 Wis. 2d 404, 171 N. W. 2d 188, as authority for their contention that the evidence compels a finding of reliance. The language which appellants have cited from the *Everlite Case* deals with the question of the reasonableness of reliance, not with its existence. The only evidence in the instant case touching on the question of reliance is the testimony of Francis Sorenson. On direct examination Mr. Sorenson testified that his employees took care of all routine maintenance and repairs on the company's vehicles and would simply take them to some service station when something was needed. Most major repairs were handled by him. He stated that he had bought various kinds of tires in the past, including Goodyear tires. He said that he might have purchased tires from Backens and, if he had, it would have been at his Sinclair service station. He had on occasion bought gasoline and oil at the station. Sorenson further testified that he considered

---

[2] *Harris v. Knutson, supra,* footnote 1.

Backens to be a hardworking and honest person, and that he first became aware that he was doing tire recapping when his equipment was installed in the building located about 75 to 100 yards from Sorenson's office. Sorenson stated that he went to Backens when he needed the two tires recapped because "he was right handy there." He knew that Backens sold Goodyear tires but was not sure whether he knew that Backens also sold them at the Sinclair station. When he went in to Backens' recapping plant he did not look at any new tires, only recaps. He was not aware of any brand names. Sorenson said that he did not notice any signs or advertising but that he thought there was a large sign across the front of the building, though he did not pay much attention to it.

On cross-examination Sorenson testified that he dealt with a number of service stations in the area and that he had never had any recapping done by Backens before. He stated that the sign might have been across the front of the building but he was not sure. (It is now undisputed that Sorenson was mistaken about any exterior signs since they were not delivered to Backens until several months later.) Sorenson testified that he knew that Backens sold Goodyear tires, and in response to the question of whether he placed any weight on that fact he stated: "Well, the fact that he handles good tires. We couldn't take it to a junk place."

Following this testimony respondent's attorney introduced into evidence excerpts from an adverse examination of Mr. Sorenson, without any objection by appellants' attorney, which read as follows:

" '*Question:* How did you happen to have OK Tire Service do the recapping? What brought about the necessity for it, is what I am asking.

" '*Answer:* These tires were getting down where they were a little smooth and, as I remember, the truck was not being used at that time and the place is real handy,

so we thought we would take it over there and let them fix it.'

"* * *

" 'Question: When you went to have the tires recapped by Mr. Backens you said that this was fundamentally because it was convenient, is that correct?

" 'Answer: Yes.'

"* * *

" 'Question: Was there any other reason that you had Mr. Backens do your recapping other than the fact that it was convenient?

" 'Answer: It was convenient, and he was a friend.' "

From its evaluation of this testimony, the trial court stated that:

"The plaintiff, Francis Sorenson, who purchased the tires which are the subject of this lawsuit, went to the 'Goodyear OK Tire Service' because Backens was 'a friend' and because 'it was convenient,' but he would not have gone to 'a junk place' to buy a recapped tire."

Though the court was mistaken in that Sorenson did not buy recapped tires from Backens but rather took his tires there to be recapped, its finding as to why he went there is not against the great weight and clear preponderance of the evidence. We conclude that the plaintiffs-appellants have not met their burden of proof to establish that they relied upon the fact that Backens was an apparent agent of Goodyear.

The plaintiffs-appellants also assert a second theory of recovery by urging that respondent Goodyear has a duty to the public purchaser to regulate and supervise, or to withhold public association and sanction from independent tire recappers who sell its products. They argue that this duty which they attempt to create is analogous to the duty on an employer to exercise reasonable care to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully done. Restatement, 2 *Torts* 2d, p. 376, sec. 411.

On this theory the appellants assume that Backens was not the apparent agent of Goodyear. However, while Goodyear had no actual control over Backens and the operation of his business, appellants argue that a certain degree of control should be created as a matter of law, to the extent of imposing upon Goodyear the duty to "regulate and supervise" the performance of his work. If it was not willing to do so appellants then argue that it had the duty to withhold any public association of its name with Backens.

The appellants submit that the purchaser of a recapped tire, or in this case, a party who has his own tires recapped, is entitled to expect that the recapper is properly trained and is competent in the process of recapping, and that a recapper employed by a major tire company possesses such training and competence. From this they conclude that any major tire company which allows its name to be associated with an independent tire recapper must be held liable for his lack of proper training or incompetency.

The first two elements of the appellants' argument are that "a negligently recapped tire is imminently dangerous to life and limb," and that "a tire recapper is liable for negligently recapping a tire." There can be little dispute as to the validity of both statements. The third element of their argument is that which they are trying to establish, *i.e.*, that such a duty exists on the part of Goodyear, and the fourth element is that the customer's reasonable expectations should not be denied.

If we assume that the duty urged by appellants did exist, we conclude that their own arguments would preclude them from recovery on this theory in the instant case. The appellants argue that a consumer such as Mr. Sorenson has certain expectations which lead him to patronize a business establishment such as OK Tire Service. These expectations, they contend, are molded by

the reputation of a name-brand manufacturer and the relationship which appears to exist between that manufacturer and the particular businessman with whom he deals. It is these expectations which appellants seek to justify and to protect.

However, to say that a consumer's expectations have been so formed and molded is to say nothing more than that he has relied upon the reputation of the manufacturer, and the manifestations of some sort of relationship which the manufacturer has made or allowed to be made through an individual business establishment. But if such reliance is shown, and it was reasonable under the circumstances, then the consumer has established an apparent agency upon which he may hold the manufacturer liable. To attempt to draw a distinction between reliance upon the manifestations of a manufacturer, and the mere creation of expectations by those manifestations, is to draw a rather illusory line. The two concepts are one and the same thing. A presumption of some form of reliance is present throughout appellants' second argument. It is precisely the absence of a showing of any reliance that is fatal to appellants' assertion of apparent authority; the same failure of proof would be fatal under this second theory were the court to adopt it.

The respondent has moved that the court impose double costs on the appellants for failure to comply with the provisions of sec. 251.34 (5) (c), Stats., to wit: for failing to include a synopsis of the testimony as a part of their appendix. While the motion for double costs is not without merit, in the exercise of our discretion it is denied and the respondent is allowed ordinary costs.

*By the Court.*—Judgment affirmed.