### LANDSTED HOMES, INC., Plaintiff,

v.

### Tamara SHERMAN individually and d/b/a Designs Plus, Andre Lenzen individually and d/b/a Al–Con Renovations, Chad Sime and Sarah Sime, Defendants.

No. 02–C–0007–C.

United States District Court,
W.D. Wisconsin.

Dec. 10, 2002.

Jonathon Miesen, St. Paul, MN, for Plaintiff.

Andre Lenzen, River Falls, WI, Pro se.

Chad Sime, Hudson, WI, Pro se.

Sarah Sime, Hudson, WI, Pro se.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary and injunctive relief in which plaintiff Lansted Homes, Inc. is suing all defendants for copyright infringement and defendants Tamara Sherman, d/b/a Design Plus, and Andre Lenzen, d/b/a Al–Con Renovations, for unfair competition under the Lanham Act, relating to architectural plans for the Liberty model home owned by plaintiff. Subject matter jurisdiction is present under 28 U.S.C. § 1338 (Copyright Act) and 15 U.S.C. § 1125 (Lanham Act).

Presently before the court are (1) plaintiff's motion for partial summary judgment as to liability on its copyright infringement and its unfair competition claims; and (2) defendants Chad and Sarah Sime's motion for partial summary judgment as to statutory damages and attorney fees.

On August 20, 2002, I denied plaintiff's motion to consolidate this case with Case No. 02–C–0200–C. Although the parties in this case have continued to file pleadings with a double caption, the motions presently before the court relate only to this case. Because this case and case 0200 are distinct lawsuits that have not been consolidated, the parties should file documents using only a single caption.

The parties dispute whether Richard Clark, plaintiff's employee, gave defendant Lenzen oral permission to use its architectural plans and whether Clark had authority to do so. This material dispute defeats plaintiff's motion for partial summary judgment as to liability on its copyright infringement claim. Because plaintiff has failed to establish whether the false designation has a substantial effect on interstate commerce and whether the changes defendant Sherman made to the Liberty plans did not prevent a likelihood of confusion, I will deny plaintiff's motion for partial summary judgment as to liability on its unfair competition claim under the Lanham Act. Finally, because plaintiff concedes that it is not seeking statutory damages against any defendant and that it is seeking attorney fees only against defendant Sherman under the Lanham Act, I will grant defendant Chad and Sarah Sime's motion for partial summary judgment as to statutory damages and attorney fees.

One further matter needs to be addressed. The parties frequently cite facts in their briefs that have not been proposed in compliance with this court's "Procedures to be Followed on Motions for Summary Judgment," a copy of which was provided to the parties with this court's preliminary pretrial conference order. The parties should be aware that, as the procedures warn, I will not consider facts presented only in a brief. To clarify this point, if a party wants a fact to be considered, it must set forth the fact in the proposed findings of fact or in a response or reply to a proposed finding of fact with an accompanying citation to the record.

From the proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff is in the business of designing and constructing custom and model homes. One of plaintiff's model homes is known as the Liberty Model 2000. On November 29, 2001, plaintiff registered the plans to the Liberty model home as an "architec-

tural work" with the U.S. Copyright Office.

During 1999 and 2000, plaintiff's design department was made up of two employees, Richard Clark and Steven West. From May 1992, to approximately June 25, 2002, Clark was plaintiff's design director and head of the design department. (Clark is now employed by plaintiff's competitor, Renton Homes, Inc.) Clark was West's supervisor until sometime in 2000, when West starting reporting directly to Mark Erickson, plaintiff's president. Plaintiff designs an average of one to two model homes a year, with the involvement of different employees, who meet as a team to design plans. Plaintiff's employees take notes at these meetings. Clark's business practice has been to maintain a record of materials created during the design process, including notes, diagrams and sketches.

In late 1999, Erickson asked West to design a model home that would be built in the Liberty subdivision. Clark provided assistance to West with respect to the design, including reviewing drawings and answering questions. Clark had three to four conversations with West, including a conversation about how West came up with the concept. Various documents were created during the design process of Liberty, such as notes from meetings and overlays. Consistent with his regular practice, West discarded his overlays, sketches and notes when he completed the final Liberty plans. West retained the original design, also known as the "concept plan." Other than the concept plan and final plans, there are no other documents remaining in plaintiff's files that indicate the process by which the Liberty plans were created.

During 1999 and 2000 (as well as preceding years), plaintiff subscribed to a number of magazines that contain architectural plans and designs, including Builder Maga-

zine, Professional Builder and Custom Builder. Plaintiff also purchased architectural design books. According to Clark, he and West used the magazines and books to get ideas for designs and plans. According to West, he used the magazines and books only to get ideas to resolve problems and not for design plan ideas.

Since 1990, defendant Lenzen has worked for plaintiff as a framing subcontractor and in other capacities on more than 40 projects. Defendant Lenzen worked with Clark on many aspects of design, including clarification and problem-solving. Plaintiff asked defendant Lenzen to submit a bid for the framing work on the Liberty model home. In order to facilitate bidding on the project, plaintiff gave Lenzen a copy of the Liberty plans. Defendant Lenzen neither worked on constructing the Liberty model home nor returned the plans to plaintiff.

Defendant Lenzen showed the plans to defendant Chad Sime and introduced defendants Chad and Sarah Sime to defendant Tamara Sherman, who is a draftsperson. Defendant Lenzen told defendant Sherman that he had clients (Chad and Sarah Sime) who wanted to build a home similar to the Liberty. Defendant Lenzen was paid wages for the hours he worked on the Simes' house but did not receive any additional income or profit on either labor or materials.

Defendant Sherman told defendant Lenzen originally that she did not want to copy the Liberty plans because she did not know how many changes had to be made in order to avoid copyright infringement problems. Defendant Lenzen and the Simes persuaded defendant Sherman to copy the plans with modifications. Defendant Sherman "traced and copied" certain aspects of the Liberty plans. The differences between the Liberty plans and the Sherman plans are: "shakes and gables,

details, back porch, garage, wall, front column, screen porch area in garage, back entryway/mudroom, elevation, closet and built-ins." (Although plaintiff alleges defendant Sherman made "minor" changes to the Liberty plans, defendants Chad and Sarah Sime allege the changes were "numerous." However, these parties failed to propose facts as to the exact changes.)

The Liberty plans contain the following notice on each page:

THESE PLANS ARE THE CONFIDENTIAL AND EXCLUSIVE PROPERTY OF LANDSTED HOMES, INC. NO REPRODUCTIONS ALLOWED WITHOUT WRITTEN PERMISSION. © COPYRIGHT 1999 LANDSTED HOMES, INC.

Defendants Chad and Sarah Sime and defendant Lenzen used defendant Sherman's plans to construct the Simes' home in Hudson, Wisconsin. Plaintiff never gave written authorization to defendants to use the Liberty plans. Plaintiff has never given permission to another third-party to use any of its building plans except when plaintiff has been hired to perform the construction.

In late 2000 or early 2001, after this lawsuit had been filed, Clark went to defendant Sherman's home and had a conversation with her. (The parties dispute the content of the conversation.)

## OPINION

### A. Copyright

■ To succeed on its copyright infringement claim, plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d

502, 507 (7th Cir.1994). Plaintiff obtained a certificate of registration from the U.S. Register of Copyrights for the Liberty plans. The registration establishes a rebuttable presumption as to the copyright's validity. See 17 U.S.C. § 410(c); see also Wildlife Express, 18 F.3d at 507.

■ A "side-by-side" or "ocular" comparison is used to determine whether two works are substantially similar. Wildlife Express, 18 F.3d at 506 n. 1. The determination of substantial similarity is made by using the ordinary observer test, that is "'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" Wildlife Express, 18 F.3d at 509 (quoting Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 614 (7th Cir.1982)). In other words, "two works are substantially similar if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" Id. (quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960)).

Plaintiff argues that defendants are liable for copyright infringement because it is undisputed that defendant Sherman copied portions of plaintiff's plans for the Liberty model and that Sherman's plans were used to construct a home for defendants Chad and Sarah Sime. In response to plaintiff's contentions, defendant Sherman argues that plaintiff's plans lack originality and thus are not copyrightable. In addition, defendants Chad and Sarah Sime argue that defendant Lenzen obtained oral permission to use the plans subject to certain modifications.

1. *Originality*

██ "Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." *Feist*, 499 U.S. at 348, 111 S.Ct. 1282. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345, 111 S.Ct. 1282 (citing 1 *Nimmer on Copyright* §§ 2.01[A], [B] ). "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* at 345, 111 S.Ct. 1282 (quoting 1 *Nimmer on Copyright*, § 1.08[C][1] ).

Defendant Sherman alleges that during a conversation in her home after this lawsuit had been filed, plaintiff's design director, Richard Clark, told her that the Liberty plans had been copied from a builder's magazine. Thus, defendant Sherman contends, the Liberty plans lack originality and are not copyrightable. To bolster her contention, defendant Sherman asserts that the lack of any sketches, diagrams or notes in plaintiff's files regarding the creation of the Liberty plans establishes circumstantially that they are not original. Plaintiff argues that Clark denies ever making such an admission to defendant Sherman and it contends that, in any event, this disputed fact is insufficient to preclude granting summary judgment in plaintiff's favor given plaintiff's evidence to the contrary. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

██ Because plaintiff registered its copyright as to the Liberty plans within the requisite five-year time frame, it has established prima facie evidence of the copyright's validity. *See* 17 U.S.C. § 410(c); *see also Wildlife Express*, 18 F.3d at 507. Encompassed within a copyright's validity is the presumption of originality. *See* 3 *Nimmer on Copyright* § 12.11[B][1]; *Modern Publishing v. Landoll, Inc.*, 849 F.Supp. 22 (S.D.N.Y.1994). In this case, the net effect of registration is to place the burden on defendant Sherman to prove that plaintiff copied from a prior source and, thus, the Liberty plans lack originality. *See* 3 *Nimmer on Copyright* § 12.11[B][1] at n. 46 (collecting cases); *see also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).

██ Proof that plaintiff copied from a prior source involves the same elements that would be required for plaintiff to establish that defendant copied its work, namely, access and similarity. *See* 3 *Nimmer on Copyright*, § 12.11[B][1] at n. 50; *see also North Coast Industries v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034 (9th Cir.1992) ("to establish that the plaintiff copied a preexisting work, a defendant must show that plaintiff had access to the prior work and that plaintiff's work is substantially similar to the prior work in both ideas and expression."). Assuming that defendant Sherman's allegations regarding Clark's admission are true, as I must at this stage of the proceedings, I find that she has not established either access or similarity, two elements necessary to prove lack of originality. In other words, in order to survive summary judgment, defendant Sherman had to establish that plaintiff had access to the alleged source plans and that this source is substantially similar to plaintiff's plans. *See Sid & Marty Krofft Television v. McDonald's*

*Corp.,* 562 F.2d 1157, 1162 (9th Cir.1977) (copying is "shown by circumstantial evidence of access to the copyrighted work and substantial similarity between the copyrighted work and defendant's work"); *see also Schacht v. Wisconsin Dept. of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999) (summary judgment "is the 'put up or shut up' moment in a lawsuit"). Without the alleged source plans, it is impossible to determine whether there is substantial similarity between the two works or whether plaintiff had access to that source. *See Wildlife Express,* 18 F.3d at 506 n. 1. ("side-by-side" or "ocular" comparison used to determine whether two works are substantially similar). Thus, defendant Sherman's allegations regarding Clark's admission, even if true, are not enough to establish that plaintiff's plans lack originality as a matter of law because she has failed to establish either access to or substantial similarity with the alleged source plans.

### 2. *Oral Permission*

Defendants Chad and Sarah Sime allege that Clark gave defendant Lenzen oral permission to use the Liberty plans so long as they were changed in "certain" respects, that Lenzen would not claim the design as his own and that the home would not be advertised or used as a model. Plaintiff contends that (1) Clark denies giving such oral permission and, in any event, permission had to be in writing; (2) Clark had no authority to give permission; and (3) viewing plaintiff's evidence collectively, plaintiff is entitled to summary judgment.

#### a. Writing

 Plaintiff contends that even if oral permission were given, copyright law requires the alleged permission be in writing pursuant to 17 U.S.C. § 204(a). It is true that under the Copyright Act, a "transfer of copyright ownership" is not valid unless it is in writing. *See* 17 U.S.C. § 204(a). However, under the Copyright Act, a "transfer of copyright ownership" does not encompass a nonexclusive license. *See* 17 U.S.C. § 101. In this case, Chad and Sarah Sime's allegations amount to a nonexclusive license. Because no transfer of copyright ownership occurs with a nonexclusive license, no writing is required and permission may be granted orally. *See Walthal v. Rusk,* 172 F.3d 481, 484 (7th Cir.1999); *see also I.A.E. Inc. v. Shaver,* 74 F.3d 768 (7th Cir.1996) (" 'nonexclusive license may be granted orally, or may even be implied from conduct' ") (quoting 3 *Nimmer on Copyright* § 10.03[A][7] ). Perhaps this is the reason plaintiff abandoned this argument in its reply brief. Instead, plaintiff alters its argument, contending that because each page of the Liberty plans provides that "no reproductions allowed without written permission," defendants cannot rely on Clark's alleged oral permission to the contrary. However, plaintiff fails to cite any law in support of its conclusion. *See Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.,* 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived."). In any event, to the extent plaintiff is grounding its argument in contract law, plaintiff's unilateral notification of a writing requirement on the plans is not a contract to which an oral agreement to the contrary would be deemed inadmissible under the parol evidence rule. *See, e.g., Schmitz v. Grudzinski,* 141 Wis.2d 867, 872, 416 N.W.2d 639, 641 (1987) ("Parol evidence is inadmissible to vary or explain unambiguous written terms.").

#### b. Apparent authority

 Plaintiff argues next that even if Clark gave defendant Lenzen oral permis-

sion to use the plans, he did not have authority to do so. Plaintiff contends that this is a non-issue because "Ms. Sherman specifically acknowledged [Clark's lack of authority] during her deposition." *See* Plt.'s Reply, dkt. # 55, at 3. However, whether Clark had actual or apparent authority is not a fact to be determined by defendant Sherman, a person with no involvement in the alleged conversation between Clark and defendant Lenzen.

 In order to establish apparent authority, a party must show (1) acts by the agent or principal justifying belief in the agency; (2) knowledge by the party sought to be held; and (3) reliance consistent with ordinary care. *Amplicon, Inc. v. Marshfield Clinic,* 786 F.Supp. 1469, 1476 (W.D.Wis.1992) (citing *Larkin v. Johnson,* 67 Wis.2d 451, 457, 227 N.W.2d 90 (1975)). Apparent authority is a question of fact. *Iowa National Mutual Insurance Co. v. Backens,* 51 Wis.2d 26, 34, 186 N.W.2d 196, 200 (1971). "[A]pparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or to make representations as his agent." *Ivers & Pond Piano Co. v. Peckham,* 29 Wis.2d 364, 370, 139 N.W.2d 57, 60 (1966). " '[T]he apparent authority for which the principal may be liable must be traceable to him, and cannot be established solely by the acts and conduct of the agent; the principal is only liable for that appearance of authority caused by himself.' " *Amplicon,* 786 F.Supp. at 1476 (quoting *Sater v. Cities Service Oil Co.,* 235 Wis. 32, 40, 291 N.W. 355, 359 (1940)).

In this case, Clark was head of plaintiff's design department and defendant Lenzen worked closely with him in clarifying design problems. Given Clark's position and defendant Lenzen's working relationship with Clark as well as plaintiff, it is for the factfinder to determine whether Clark had apparent authority to give defendant Lenzen to use the plans and whether in fact Clark gave him permission.

### c. Cumulative factors

Plaintiff argues that notwithstanding the parties' dispute whether Clark gave defendant Lenzen oral permission to use the Liberty plans, summary judgment must be granted in its favor when the court views the following facts cumulatively: (1) Clark is no longer employed by plaintiff and, thus, had no reason to be untruthful when he testified that he did not give defendant Lenzen permission to use the plans; (2) plaintiff has never given permission to any other third-party to use its plans without also being hired to do the construction; (3) the plans specifically provide "no reproductions allowed without written permission." Although this argument may well carry the day at trial, it will not support a grant of summary judgment because it would require the court to view the evidence in the light most favorable to the *moving* party. This is something a court cannot do. As is well established, to prevail on a motion for summary judgment, the moving party must show that even if all inferences are drawn in the light most favorable to the non-moving party, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Credibility determinations are for the jury. Accordingly, I will deny plaintiff's motion for partial summary judgment as to liability on its copyright infringement claim.

### B. *Lanham Act: Unfair Competition*

 The Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services ... uses in

commerce ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin ... of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

Citing *Johnson v. Jones,* 149 F.3d 494 (6th Cir.1998), plaintiff contends that it is a violation of the Lanham Act for one draftsperson to put his or her name on the work product of another draftsperson. This is an over-simplistic view of the law. In *Johnson,* one architect put his name on plans belonging to another architect. However, the court stated explicitly that "[a] Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Id.* at 502; *see also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 971 (7th Cir.1999); *Consumers Union of the United States v. New Regina Corp.,* 664 F.Supp. 753, 764 n. 12 (S.D.N.Y.1987) (false designation elements include "an effect on interstate commerce, and a false designation of origin or false description or representation of the goods or services."). Although the court of appeals went into great detail establishing the interstate commerce prong, *see Johnson,* 149 F.3d at 502 (plaintiff architect was licensed and conducted business in three states), plaintiff ignores this element. Moreover, in its brief in support, plaintiff provides no analysis regarding the likelihood of confusion prong. And in its reply brief, plaintiff merely refers to "facts," such as an alleged likelihood of confusion by subcontractors, material suppliers and government officials who came in contact with the Sime house. However, plaintiff did not propose these "facts" properly or, for that matter, even provide a citation to the record in its brief.

Instead of analyzing the elements of its Lanham Act claim, plaintiff asserts that "[t]here is no dispute in this case that Ms. Sherman 'traced and copied' Landsted's Liberty Model plans." Plt.'s Br. in Supp., dkt. # 32, at 10. This statement is inaccurate. Even plaintiff concedes that defendant Sherman made at least "minor" changes to the Liberty plans. The undisputed fact is that defendant Sherman traced and copied *portions* of the Liberty plans and that the following elements had been changed: "shakes and gables, details, back porch, garage, wall, front column, screen porch area in garage, back entry-way/mudroom, elevation, closet and built-ins." Because plaintiff has failed to establish whether the alleged false designation had a substantial effect on interstate commerce or whether the changes defendant Sherman made to plaintiff's plans did not prevent a likelihood of confusion, I will deny plaintiff's motion for partial summary judgment as to liability on its Lanham Act unfair competition claim.

### C. Statutory Damages and Fees

Defendants Chad and Sarah Sime filed a motion for partial summary judgment as to statutory damages and attorney fees. Because plaintiff concedes that it is not seeking statutory damages against any defendant and that it is seeking only attorney fees and only against defendant Sherman under the Lanham Act, I will grant defendants Chad and Sarah Sime's motion for partial summary judgment.

### ORDER

IT IS ORDERED that

1. Plaintiff Landsted Homes, Inc.'s motion for partial summary judgment as to liability under the Copyright Act and Lanham Act is DENIED; and

2. Defendants Chad and Sarah Sime's motion for partial summary judgment as to statutory damages and attorney fees is GRANTED.