STUECK, by Guardian *ad litem*, and another, Appellants, v. LE DUC, d/b/a WISCONSIN ASPHALT COMPANY, and another, Respondents.

*No. 164.  Submitted under sec. (Rule) 251.54 March 1, 1973.—*
*Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 139.)

736

For the appellants the cause was submitted on the brief of *Terese A. Tillman* and *James P. Brennan,* both of Milwaukee.

For the respondent the cause was submitted on the brief of *Arnold, Murray & O'Neill,* attorneys, and *Robert C. Watson* of counsel, all of Milwaukee.

CONNOR T. HANSEN, J.   The issue presented on this appeal is whether Wisconsin Asphalt was afforded insurance coverage on the date of the accident, May 23, 1964.

It is undisputed that Wisconsin Asphalt had insurance coverage with the respondent for the one-year period from April 18, 1963, to April 18, 1964. It is the position of the respondent that its contract for liability insurance expired April 18, 1964, and that no insurance coverage existed as of May 23, 1964.

Ralph Austin, of the respondent's policy service department, testified that on April 8, 1964, a notice for renewal premium was sent to Wisconsin Asphalt which stated the renewal date was April 18, 1964. This notice stated the time for premium payment was extended to April 30, 1964.

Le Duc testified that he received the renewal premium notice at the same time he received two other notices from the respondent but was uncertain and was merely assuming this. He testified that he was uncertain as to the exact time of receipt but felt it was sometime before April 30, 1964.

Austin further testified that a second notice was sent to Wisconsin Asphalt on May 6, 1964. Written on the face of this notice was:

### "IMPORTANT! LAPSE NOTICE

"Although the Renewal Date of your policy has passed, you can still void the lapse of your policy. Payment within 15 days of Due Date below (or Extended Date if shown) will renew your policy without interruption of coverage. Otherwise, your insurance will remain lapsed as of the Due Date."

Again, stamped over the renewal date was a notation that the time for payment was extended to April 30, 1964.

Le Duc testified that he made out a check to respondent in the amount of the premium on May 22, 1964, and that he was not certain as to when it was mailed but assumed it was on the same day. Austin testified that the records of the respondent indicate that the check was received May 25, 1964.

May 23, 1964, the accident occurred out of which this action arose. An accident report was filled out and sent to the respondent.

Austin testified that a "POLICY IS OUT OF FORCE" notice was sent to the insured on May 25, 1964, along with a check made out to Wisconsin Asphalt as a refund of the premium less some other claimed owed premium. That notice provided:

### "YOUR POLICY IS OUT OF FORCE

"Did you really intend to let the protection afforded by this policy lapse? If you have not already done so,

may we suggest you send in your premium now. If received within 60 days of the Lapsed Date shown your protection will again be in force from and after date full payment is received at any of our offices."

The "Lapsed Date" was given as April 18, 1964. Austin testified that the records of respondent revealed no other notice to the insured before May 25, 1964.

The plaintiffs acknowledge that sec. 631.36 (4), Stats., relating to the cancellation and renewal of insurance contracts was enacted several years after the cause of action arose in this case.[1] The provisions of this section are not retroactive.

Therefore, whether defendant, Wisconsin Asphalt, was afforded insurance coverage on May 23, 1964, is determined by the then existing contract law.

Paragraph 80 of the policy provided:

"80 The entire policy shall automatically and immediately become canceled and void upon the expiration date of any current term, if the named insured defaults in making payment of amounts required to maintain the premium deposit."

The evidence shows that approximately ten days prior to the expiration date of the policy, April 18, 1964, respondent sent a renewal premium notice to Wisconsin Asphalt stating that unless the premium was paid by April 30, 1964, the policy would lapse. No premium was tendered by Wisconsin Asphalt prior to April 30, 1964. May 6, 1964, respondent again offered to renew the policy without interruption if Wisconsin Asphalt would tender the premium by May 15, 1964. No premium was tendered. On May 22, 1964, seven days subsequent to the last deadline for payment, Wisconsin

[1] Ch. 337, Laws of 1967. Therefore, we do not consider it necessary to decide whether the provisions of sec. 631.36 (4), Stats., are applicable to the factual situation presented in the instant case.

Asphalt tendered payment of the premium to respondent. This payment was returned to Wisconsin Asphalt along with a notice that the policy was out of force.

Since the renewal of a policy is the effecting of insurance for a term not already covered, it follows that all elements necessary for the formation of a contract of insurance must likewise be satisfied in order to have a binding contract to renew.[2]

The notices sent by respondent to Wisconsin Asphalt constitute offers to renew that contract and do not effect a contract unless accepted by the insured.[3] A renewal of a policy of insurance is a contract and cannot be effected or consummated without the mutual assent of the parties, *i.e.,* a meeting of minds as to the essentials of the contract. *Redeman v. Preferred Accident Ins. Co.* (1934), 215 Wis. 321, 327, 254 N. W. 515. In 17 Couch, *Insurance* (2d ed.), p. 676, sec. 68:30, it is stated:

"In order for the renewal of an insurance policy to be effective, there must be an offer to renew and an acceptance thereof.

"Even when the policy provision in effect constitutes a continuing offer of the insurer to agree to a renewal, there still must be an acceptance of that offer by the insured.

"If an insured is not bound by contract to pay the premium on an accident policy with provision for loss of life through accidental means, the insurer is not bound to cover the risk, and where the insured never obligated himself to pay the premium for a renewal term policy and did not accept the offer to renew, the insurer was not bound."

The rule is similarly stated in 44 C. J. S., *Insurance,* pp. 1125–1127, sec. 283:

---

[2] 17 Couch, *Insurance* (2d ed.), p. 673, sec. 68:26.

[3] 1 Couch, *Insurance* (2d ed.), p. 508, sec. 12:3.

"A binding contract of renewal must be clearly established, and must have all the essentials of a valid contract, as in the creation of the contract in the first instance, discussed supra sec. 227. Thus a renewal cannot be effected or consummated without the mutual assent of the parties and a meeting of the minds of the parties on all the essentials of the contract, and a new consideration. A mere custom of companies or their agents in certain localities to renew, without request, is not sufficient to establish a renewal, unless it is of such a nature as to be binding on insured as well as on insurer." [4]

Under the state of facts found to exist, no contract of insurance could arise in the absence of an express or implied acceptance by Wisconsin Asphalt. While the remittance by the insured of his personal check to the insurer for the correct amount of the premium may constitute an acceptance of an offer to reinstate a liability policy,[5] the remittance in the instant case came seven days after the offer from the respondent to Wisconsin Asphalt expired.

The payment of premiums constituted a condition precedent for insurance coverage. The trial court found that the respondent notified the insured that if it did not pay its premium the insurance would lapse, and that the insured did not pay its premium on time. These factual determinations are not contrary to the great weight and clear preponderance of the evidence and, therefore, must be accepted by this court on review. *Milbauer v. Transport Employes' Mut. Benefit Society* (1973), 56 Wis. 2d 860, 862, 203 N. W. 2d 135; *Resseguie v. American Mut. Liability Ins. Co.* (1971), 51 Wis. 2d 92, 105, 186 N. W. 2d 236; *Weed v. Lepianka, supra,* page 205; *Mitchell v. Western*

[4] *See: Weed v. Lepianka* (1966), 30 Wis. 2d 198, 205, 140 N. W. 2d 305.

[5] 17 Couch, *Insurance* (2d ed.), p. 677, sec. 68:32.

*Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 141 N. W. 2d 212.

Wisconsin Asphalt did not accept respondent's offer and no contract of insurance existed.

Plaintiffs argue that in light of the previous practices and customs of respondent of continuing coverage past the end of the policy term even though the renewal premium was not paid, the policy issued to Wisconsin Asphalt was in full force and effect at the time of the accident, May 23, 1964.

This same argument was rejected by this court in *Weed v. Lepianka, supra.* At pages 203 and 204, it is stated:

"In effect the appellants contend that as the result of the granting of credit on the issuance of the policies for the two preceding years, that the parties had arrived at the custom that credit was again to be extended to her, and that she had reason to believe that she was afforded insurance coverage on a credit basis.

"We do not deny that such circumstances can arise. The custom of insurance companies of automatically renewing policies year after year and then billing the customer later could well estop the company's denial of coverage, even though a tender of payment was not made until after the loss. That, however, is not the fact situation here. Whether the policy was to be renewed depended not only upon the past course of dealings between the parties, but upon the transaction with respect to this particular policy. It is undisputed that if the payment of premium were a condition precedent for insurance coverage, then no coverage was afforded in this instance. . . ."

As previously stated, the trial court found the payment of the premium as a condition precedent for insurance coverage. In addition, there was no conduct on the part of the respondent that would lead Wisconsin Asphalt to conclude that policy coverage would be extended beyond April 18, 1964, unless payment of the premium was tendered prior to May 15, 1964.

The evidence at trial indicated that Wisconsin Asphalt often suspended the use of its trucks during the winter and that respondent upon an audit the following spring would either credit a portion of premium already paid to the premium due for the next year or charge Wisconsin Asphalt an additional charge for the preceding year. For the year, April 18, 1963, to April 18, 1964, Wisconsin Asphalt owed respondent an additional amount upon its coverage for that year. The testimony at trial showed that the defendant, Le Duc, and his partner had both participated in insurance classes as temporary insurance agents and that on one occasion, previous to the incidents now under consideration, respondent had canceled a policy issued to Wisconsin Asphalt for the nonpayment of a premium due on the policy. From these facts and others it would appear that Wisconsin Asphalt was knowledgeable as to insurance practices and was not "lulled" into thinking it had extra time to make the renewal payment.

It cannot be contended that respondent is estopped from raising as a defense the absence of any contract of insurance by reason of the company's previous acts. Insurance contracts cannot be created by estoppel. The doctrine cannot be invoked by the insured to create a primary liability of the insurer for which all elements of a binding contract are necessary.[6] In *Madgett v. Monroe County Mut. Tornado Ins. Co.* (1970), 46 Wis. 2d 708, 710, 711, 176 N. W. 2d 314, this court stated:

"Estoppel can block, but it cannot create. It is a barricade that can stop a litigant from proceeding down a roadway that, except for estoppel, would be open to him. It is not a bulldozer that can create a roadway where none in fact exists or ever did. Estoppel may

[6] 16A Appleman, *Insurance Law and Practice*, pp. 339, 340, sec. 9090; *Kamikawa v. Keskinen* (1969), 44 Wis. 2d 705, 711, 172 N. W. 2d 24; *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 162 N. W. 2d 129.

prevent an insurer from enforcing certain policy provisions against its insured. However, even where the relationship of insurer and insured exists, estoppel cannot be used to enlarge the coverage of an insurance policy, for then the effect would be to create '. . . a new contract providing coverage for which no premium has been paid.' " [7]

Wisconsin Asphalt's failure to respond to respondent's offer to renew coverage without interruption upon payment of the premium by May 15, 1964, resulted in the nonacceptance of the offer, thereby preventing a renewal of the insurance contract.

*By the Court.*—Judgment affirmed.

---

[7] *See also: Artmar, Inc. v. United Fire & Casualty Co.* (1967), 34 Wis. 2d 181, 185, 186, 148 N. W. 2d 641, 151 N. W. 2d 289.